**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

CHERIE WASHBURN,                          )
                                          )
            Plaintiff,                    )
v.                                        )        **Civil Action No. 1:23-00066**
                                          )
DANA RENICK, *et al.*,                    )
                                          )
            Defendants.                   )

**PROPOSED FINDINGS AND RECOMMENDATION**

On January 27, 2023, Plaintiff, acting *pro se*,[1] filed her Complaint for alleged violations

of her constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of</u>

<u>Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document

No. 1.) In her Complaint, Plaintiff names the following as Defendants: (1) Dana Renick, FPC

Alderson; (2) Sherry Walton, FPC Alderson; (3) Warden Rile, FPC Alderson; and (4) FPC

Alderson. (<u>Id.</u>) Plaintiff alleges that she self-reported to FPC Alderson on March 25, 2022. (<u>Id.</u>,

p. 4.) Plaintiff explains that she was 7 ½ weeks postpartum. (<u>Id.</u>) Plaintiff alleges that she

notified FPC Alderson staff at intake in April 2022, that she needed to see an OB-GYN and she

was suffering with severe postpartum depression. (<u>Id.</u>) Plaintiff explained that she was unable to

be evaluated by her OB-GYN prior to her surrender date, and she still needed her postpartum

exam. (<u>Id.</u>) Plaintiff was advised she would be placed on call-out to see a doctor. (<u>Id.</u>) Plaintiff

complains that "weeks passed" and she was not evaluated by a doctor or provided with any

treatment for her postpartum depression. (<u>Id.</u>, pp. 4 – 5.) Plaintiff alleges that she then went to

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

sick-call to request help for her postpartum depression, which she claims had worsened to the point where "could not stop crying." (Id.) Plaintiff states she was having "phantom baby cries, I could not sleep, and I was having feelings of confusion and disorientation." (Id.) Plaintiff acknowledges that she was again advised she would be placed on call-out to see a provider. (Id.) Plaintiff claims that by the "end of May, [her] symptoms were extreme, hearing phantom baby cries, inability to sleep, inability to eat, confusion, and uncontrolled crying." (Id.) Plaintiff alleges that as a result, she developed shingles. (Id.) Plaintiff acknowledges she went to sick-call and was provided an antiviral medication. (Id.) Plaintiff, however, states that she begged for help with her postpartum depression, hard knots in her breast, and breast pain. (Id.) Plaintiff states she was again informed to watch call-out. (Id.) Plaintiff acknowledges that at the end of May, she was evaluated by Defendant Renick and provided a low dose prescription for an antidepressant. (Id.) Plaintiff contends that Defendant Renick further stated that she would put Plaintiff on call-out to be evaluated by an OB-GYN. (Id.) Plaintiff alleges that after taking the antidepressant medication for a few days, she had a reaction causing vomiting and severe headaches. (Id.) Plaintiff explains she went to Health Services and the nurse on duty called Defendant Renick for treatment authorization. (Id.) Plaintiff complains that she was tested for COVID despite her lack of a fever or other COVID related symptoms. (Id.) Plaintiff asserts that despite her negative test results for COVID, Defendant Renick ordered Plaintiff to be placed in isolation in the active COVID unit. (Id.) Plaintiff alleges that although she was still suffering from postpartum depression and breast pain, she was held in COVID isolation for nearly one month where she could not get treatment for her postpartum depression or breast pain. (Id.) During this one month period of isolation, Plaintiff alleges that she "wrote Jennifer Knox at Central . . . because [she]

was very sick and could not get help." (Id.) Plaintiff states that when she was finally allowed to return to her unit, she had lost 18 pounds and was dehydrated. (Id., p. 6.) Plaintiff alleges she reported to sick-call in September complaining that her "ovary pain was worse and [she] still had never seen an OB-GYN." (Id.) Plaintiff states that an ultrasound was conducted, which revealed ovarian cysts. (Id.) Plaintiff asserts "[t]o date, [she has] never seen an OB-GYN [and] never had a breast exam." (Id.) Based on the foregoing, Plaintiff alleges that Defendant Renick acted with deliberate indifference to her health and safety in violation of the Eighth Amendment by failing to adequately treat her postpartum depression and breast pain, and placing her in the active COVID unit knowing she tested negative and was at high risk. (Id.)

Next, Plaintiff alleges that Defendant Sherry Walton violated her constitutional rights when she reviewed and denied Plaintiff relief under the CARES Act. (Id., p. 7.) Plaintiff alleges that when Defendant Walton originally reviewed Plaintiff under the CARES Act in May 2022, she advised Plaintiff that she did not have a risk factor. (Id.) Plaintiff explains that she again asked to be reviewed under the CARES Act in mid-July, which was after she wrote the Central Office complaining about her placement in COVID isolation and the denial of medical care. (Id., pp. 6 - 7.) Plaintiff alleges that "in October Ms. Walton denied [her] based on a comment [the] Judge made about COVID [and] [t]his denial was not based on any of the valid criteria outlined in the CARES Act memorandum." (Id.) Plaintiff explains that "[i]t was an opinion of the Judge that she did not think COVID was a mitigating sentencing factor for purposes of the duration of the sentence." (Id.) Plaintiff argues that "[t]he Court transcript clearly shows the comment was in response to the request for the low end of the plea agreement, and had absolutely no bearing on the CARES Act health risk factors or minimum PATTERN score review factors." (Id.) Plaintiff

states that "Unit Team Mr. Snuffer" approved her for home confinement under the CARES Act, but Defendant Walton denied it. (Id.) Plaintiff states that she was not reviewed "fairly" because she was the "only one reviewed by researching the Judge's comments and [she] was the only person on this compound to have been denied based on a comment and COVID opinion of the Judge." (Id.) Plaintiff alleges the foregoing resulted in a "violation of [her] constitutional right to be free from discrimination and retaliation." (Id., p. 8.) Plaintiff asserts that "reviewing someone in a wholly separate and unrelated manner differently than the policy and differently than all other people reviewed is the definition of discrimination." (Id., p. 8.) Plaintiff states that she "believes she was retaliated against based on her contact with the Central Office." (Id.)

Finally, Plaintiff alleges that Warden Rile subjected Plaintiff to unconstitutional conditions of confinement by ordering continuous lighting in her unit for 24/7 from on or about July 1, 2022 through July 30, 2022. (Id., p. 9.) Plaintiff explains that the foregoing was the result of an inmate tampering with a light bulb with the floor lighting. (Id.) Plaintiff states the entire unit had to sleep with the lights on for 24 hours a day for one month. (Id.) Plaintiff alleges that "having high intensity bright lights always on caused sleep deprivation, dizziness and fatigue." (Id.) Plaintiff asserts she was "on the top bunk directly under the main row of lighting and it was torture to never be able to sleep." (Id.) Plaintiff alleges that her "eyes became red and swollen" and she suffered from dizziness and headaches. (Id.) Plaintiff further complains that she was disoriented because she could not tell if it was day or night. (Id.) Plaintiff asserts the foregoing constituted cruel and unusual punishment. (Id.)

Based on the foregoing alleged constitutional violations, Plaintiff requests injunctive and monetary relief. (Id., p. 10.)

As Exhibits, Plaintiff attaches the following: (1) A copy of her "Health Problems" as noted by Health Services (Document No. 1-1, p. 1.); (2) A copy of Plaintiff's "Inmate to Staff Message" to Ms. Walton regarding the CARES Act (Id., pp. 2, 9 - 10.); (3) A copy of pertinent pages from the BOP's "Rights and Responsibilities" (Id., pp. 3 – 4.); (4) A copy of Plaintiff's "Inmate Request to Staff" dated April 4, 2022, requesting medication for her postpartum depression (Id., p. 5.); (5) A copy of Associate Warden Napier's "Response to Correspondence" notifying Plaintiff that she was ineligible for earlier home confinement placement based on the CARES Act (Id., p. 6.); (6) A copy of Plaintiff's "Request for Administrative Remedy" dated October 17, 2022, regarding her denial of release to home confinement under the CARES Act (Id., p. 7.); (8) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 4, 2022, regarding her denial of release to home confinement under the CARES Act (Id., p. 8.); (9) A copy of an Affidavit from Inmate Samantha Miller (Id., p. 11.); (10) A copy of an Affidavit from Inmate Melissa Rous (Id., p. 12.); (11) A copy of Plaintiff's "Inmate to Staff Message" to Mr. Smith regarding the CARES Act (Id., p. 13.); (12) A copy of Plaintiff's "Inmate to Staff Message" to Associate Warden Brammer regarding the CARES Act (Id., p. 14.); (13) A copy of Plaintiff's "Inmate to Staff Message" to Dr. Smith regarding the CARES Act (Id., p. 15.); (14) A copy of Plaintiff's "Inmate Request to Staff" dated November 28, 2022, regarding a request for medication for panic attacks (Id., p. 16.); (15) A copy of a letter in support of Plaintiff prepared by Shemika Williams (Id., pp. 17 – 18.); and (16) A copy of an Affidavit from Inmate Ashley Shackelford (Id., p. 19.).

## **STANDARD**

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental

entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can

6

ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## DISCUSSION

### 1.    FPC Alderson is an Improper Party:

A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th

7

Cir. 1991); Reingold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999). To the extent Plaintiff has named the FPC Alderson as a defendant in her Bivens action, FPC Alderson should be dismissed. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against FPC Alderson be dismissed.

**2.** **Eighth Amendment:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory

liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [her] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant

physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to her health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

        **(a)**     ***Conditions of Confinement.***

       Plaintiff contends that the conditions of her confinement were cruel and unusual because she was temporary exposed to continuous lighting for 24 hours a day, 7 days a week, for a 30 day period. (Document No. 1, p. 9.) In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Plaintiff claims that while she was temporary exposed to continuous lighting, she suffered sleep deprivation, dizziness, fatigue, and headaches. Although sleep can constitute a basic human need, Plaintiff fails to allege any sufficiently serious deprivation of her basic human need for sleep as to constitute an Eighth Amendment violation. See Murry v. Edwards County Sheriff's Dep't., 248 Fed.Appx. 993, 998 - 99 (10th Cir. Oct. 1, 2007)(finding that occasional disturbance of sleep by continual lighting, leading sometimes to

10

mild physical symptoms, was not sufficiently serious to result in an Eighth Amendment violation); Nikirk v. Rodriquez, 129 Fed.Appx. 103, 104 (5th Cir. Apr. 20, 2005)(holding that the District Court properly dismissed inmate's claim as frivolous where inmate alleged an Eighth Amendment violation based upon a denial of sleep due to nighttime head-counts where inmate failed to allege serious physical or psychological damage); Hunnewell v. Warden, 19 F.3d 7 (1st Cir. 1994)(unpublished decision)(holding that inmate's claim that "cell lights are on during the night making it difficult to sleep" and "the ventilation system blows dust and fibers into his cell causing him to have headaches and bloody noses" was insufficient to state a claim under the Eighth Amendment); Saunders v. Moore, 2021 WL 4451430, * 4 (S.D.W.Va. Aug. 12, 2021)(finding no Eighth Amendment violation where plaintiff alleged that during his 30 day placement in segregation he was subjected to continuous lighting for 24 hours a day, only allowed to shower six times, there was no running water in his cell, the cell window leaked water, no mat for 6 a.m. to 11 p.m., and no recreation, law library, telephone or commissary privileges); Rivera v. Virginia Department of Corrections, 2016 WL 7165997, * 13 (W.D.Va. Dec. 8, 2016)(finding plaintiff failed to allege a cognizable Eighth Amendment violation based on restrictive conditions that caused him "various mental and physical discomforts, such as loss of sleep and weight, vision issues, headaches, anxiety, and mental problems"); Ajaj v. United States, 479 F.Supp.2d 501, 512 (D.S.C. 2007)(citing Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994)("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare."); Spivey v. Doria, 1994 WL 97756, * 11 (N.D.Ill. 1994)(finding no constitutional violation where inmate alleged that the noise level caused him to lose sleep and made him irritable; reasoning that "federal courts are not the forums to determine proper lighting and noise levels in jails");

11

Hutching v. Corum, 501 F.Supp. 1276, 1293(D.Mo. 1980)(finding no constitutional violation despite all-night illumination and high noise levels at night, where inmates failed to allege "evidence indicating that the inmates are unable to sleep at all or that they have developed psychological or physiological problems); but see Walker v. Schult, 717 F.3d 119, 122-26 (2nd Cir. 2013)(finding a plausible sleep deprivation claim where plaintiff alleged his five cellmates made constant, loud noise inside the cell all night); Harper v. Showers, 174 F.3d 716, 717-20 (5th Cir. 1999)(finding a plausible sleep deprivation claim where plaintiff was placed in a cell next to "psychiatric patients who scream, beat on metal toilets, short out the power, flood cells, throw feces, and light fires, result in the loss of sleep for days at a time"); Antonelii v. Sheahan, 81 F.3d 1422, 1433 (7th Cir. 1996)(finding cognizable sleep deprivation claim where noise "occurred every night, often all night"). The conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offense against society." Strickler, 989 F.2d at 1380. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

Furthermore, Plaintiff fails to allege any facts establishing that she suffered serious injury resulting from the challenged condition. Strickler, 989 F.2d at 1381(an inmate "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious physical or mental injury

12

resulting from the conditions of confinement). In the instant case, Plaintiff merely alleges that suffered from dizziness, headaches, and red eyes. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)(finding plaintiff failed to alleged sufficiently serious injuries where plaintiff complained of breathing problems, chest pains, dizziness, sinus problems, headaches, and loss of energy); DePaola v. Ray, 2013 WL 4451236, * 10 (W.D.Va. July 22, 2013)(finding allegations of humiliation, nausea, and psychological trauma were not sufficiently serious injuries); Wade v. Robinson, 2006 WL 1700908 (W.D.Va. June 16, 2006)(finding plaintiff's allegations of headaches, gastrointestinal distress, and exacerbation of allergies and asthma were not sufficiently serious injury). Based upon the foregoing, the undersigned finds that Plaintiff's claim against Warden Rile based on continuous lighting fails to state a claim under the Eighth Amendment for which relief can be granted. As more thoroughly explained below, the undersigned further finds that Plaintiff's Eighth Amendment claim based upon unconstitutional conditions of confinement is an improper extension of Bivens.

(b)     *Deliberate Indifference Regarding Medical Care:*

In her Complaint, Plaintiff alleges that Defendant Renick acted with deliberate indifference to her health and safety in violation of the Eighth Amendment by failing to adequately treat her postpartum depression and breast pain, and placing her in the active COVID unit knowing she tested negative and was at high risk. (Document No. 1.) Liberally construing Plaintiff's Complaint, the undersigned concludes that Plaintiff has alleged a facially plausible claim under the Eighth Amendment again Defendant Renick.

**3.     No Extension of Bivens:**

Next, the undersigned considers whether Plaintiff's conditions of confinement claim under the Eighth Amendment and retaliation claim under the First Amendment constitute an

13

improper extension of <u>Bivens</u>. As state above, Plaintiff alleges that she was subjected to unconstitutional conditions of confinement based upon her exposure of continuous lighting for 24 hours a day, for a 30-day period. (Document No. 1.) Plaintiff further alleges that Defendants retaliated against Plaintiff for pursuing her administrative remedies. (<u>Id.</u>)

As stated above, a <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See Bivens</u>, 403 U.S. at 395 -97, 91 S.Ct. at 1999. <u>Bivens</u> core premise is to deter individual officers' unconstitutional acts. <u>Correctional Services Corp v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend <u>Bivens</u> to confer a right of action for damages against private entities acting under the color of federal law). In <u>Bivens</u>, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. <u>Bivens</u>, 403 U.S. at 396, 91 S.Ct. 1999; <u>Hernandez v. Mesa</u>, ___ U.S. ___ 140 S.Ct. 735, 741, 206 L.Ed.2d 29 (2020)(In <em>Bivens</em>, "the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents.") In the years following the decision in <u>Bivens</u>, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment for a claim of sex discrimination, <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment for a prisoner's claim of inadequate medical care, <u>Carlson v. Green</u>, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since <u>Carlson</u>, the Supreme Court has consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants. <u>See Egbert v. Boule</u>, ____ U.S. ___, 142 S.Ct. 1793, 1799-80, 213 L.Ed.2d 54 (2022)(noting that the Supreme Court has declined 11 different time to imply similar causes of actions in the years

14

since *Bivens* was decided); <u>FDIC v. Meyer</u>, 510 U.S. at 484-86, 114 S.Ct. 996(declined to extend <u>Bivens</u> to permit suit against a federal agency); <u>also see</u> <u>Bulger v. Hurwitz</u>, ___ F.4th ___, 2023 WL 2335958, * 5 (4th Cir. March 3, 2023)(rejecting request to extend *Bivens* to a prisoner's Eighth Amendment failure to protect and intervene claims against BOP officials); <u>Dyer v. Smith</u>, 56 F.4th 271, 275 (4th Cir. 2022)(declining request to extend *Bivens* to claims against Transportation and Security Administration officers for violations of the First and Fourth Amendments); <u>Tate v. Harmon</u>, 54 F.4th 839, 841-42 (4th Cir. 2022)(rejecting request to extend *Bivens* to conditions of confinement claim under the Eighth Amendment); <u>Annappareddy v. Pascale</u>, 996 F.3d 120, 126 (4th Cir. 2021)(declining to extend *Bivens* to claims against federal prosecutors and investigators for violations of the Fourth and Fifth Amendments); <u>Earle v. Shreves</u>, 990 F.3d 774, 776 (4th Cir. 2021)(rejecting request to extend *Bivens* to claims of unlawful retaliation by prison officials for filing grievances in violation of the First Amendment); <u>Tun-Cos v. Perrotte</u>, 922 F.3d 514, 517-18 (4th Cir. 2019)(declining to extend *Bivens* to claims of unlawful searches and seizures by Immigration and Customs Enforcement agents in violation of the Fourth and Fifth Amendments); <u>Holly v. Scott</u>, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend *Bivens* to an Eighth Amendment claim against employees of a privately operated prison); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012)(declining to extend *Bivens* in a military context). In 2017, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity." <u>Ziglar v. Abbasi</u>, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted <u>Bivens</u> claim is not one of the three <u>Bivens</u>-type actions previously recognized by the Supreme Court, closer scrutiny is required. <u>Id.</u> More recently, the Supreme Court in <u>Egbert</u> noted "[n]ow long past the heady days in which this Court assumed common-law powers to create causes of

action [such as <u>Bivens</u>], we have come to appreciate more fully the tension between this practice and the Constitution's separation of legislative and judicial power." <u>Egbert</u>, ___ U.S. at ____, 142 S.Ct. at 1802(internal citations omitted). The Supreme Court stated that "[i]n both statutory and constitutional cases, our watchword is caution." <u>Hernandez</u>., ___ U.S. at ____, 140 S.Ct. at 742; <u>Tate</u>, 54 F.4th at 844 (stating that the Supreme Court's "recent admonitions are clear: '[T]he Judiciary's authority to [create a cause of action under the Constitution] is, at best, uncertain,' . . . ; courts must beware of 'arrogating legislative power'. . .; and 'our watchword is caution,'. . .")(internal citations omitted). The Supreme Court explained that "a federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, . . . and no statute expressly creates a *Bivens* remedy." <u>Hernandez</u>, ___ U.S. at ____, 140 S.Ct. at 742; <u>also see Egbert</u>, ___ U.S. at ___, 142 S.Ct. at 1809("[M]ore recently, we have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution.")

Although the Supreme Court called into doubt the validity of the "implied rights" in <u>Bivens</u>, the Supreme Court did not overturn <u>Bivens</u>. <u>Id.</u> The Supreme Court, however, "impose[d] a highly restrictive analysis for <u>Bivens</u> cases by (1) narrowing the precedential scope of <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> and (2) imposing a broad standard of criteria that, if satisfied, require courts to reject any expansion of <u>Bivens</u> remedies." <u>Tate</u>, 54 F.4th at 844. The Supreme Court explained that when asked to extend <u>Bivens</u>, a Court should engage in a two-step inquiry. <u>Hernandez</u>, ___ U.S. at ___, 140 S.Ct. at 743. First, the Court should inquire "whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" <u>Id.</u>(citation omitted). The Supreme Court clarified that its "understanding of a 'new context' is broad," thereby requiring the scope of the exiting <u>Bivens</u> causes of action to be

16

narrowly construed. Id. Second, if a claim is found to arise in a new context, the Court should inquire "whether there are any 'specific factors [that] counsel hesitation' about granting the extension." Id.(quoting Abbasi, 582 U.S. at ___, 137 S.Ct. at 1857).

In Abbasi, the Supreme Court set out a framework for determining whether a claim presents a "new Bivens context." Abbasi, 582 U.S. at ___, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a Bivens remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. Id. at 1854-55(citations omitted). The Abbasi Court explained that "[i]f the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In Tate, the Fourth Circuit recognized that a single fact distinguishing a case from Bivens, Davis, and Carlson, potentially can create a "new context." Tate, 54 F.4ᵗʰ at 846.

In the instant case, Plaintiff first alleges that Warden Rile subjected her to cruel and unusual punishment in violation of her Eighth Amendment rights by exposing Plaintiff to

17

continuous lighting 24 hours a day for a 30 day period. Recently, the Fourth Circuit determined that an inmate's Eighth Amendment claim based on alleged unconstitutional conditions of his confinement were different from any of the prior Supreme Court decisions "finding a <u>Bivens</u> cause of action and that the relief he seeks in this new context should be provided by Congress, if at all." <u>Tate</u>, 54 F.4th at 841. In <u>Tate</u>, a federal prisoner alleged that the conditions of his confinement were so degrading and detrimental that such amounted to cruel and unusual punishment in violation of the Eighth Amendment. <u>Id.</u>, 54 F.4th at 845-46. Although the prisoner in <u>Tate</u> asserted an Eighth Amendment violation similar to the plaintiff in <u>Carlson</u>, the Fourth Circuit noted that <u>Carlson</u> involved a deliberate indifference claim to an inmate's medical care whereas <u>Tate</u> was challenging the conditions of his confinement. <u>Id.</u> Thus, the Fourth Circuit held in <u>Tate</u> that the prisoner's <u>Bivens</u> claim arose in a new context. <u>Id.</u>

Next, Plaintiff argues that Defendant Walton violated her First Amendment rights by retaliating against her for filing an administrative remedy with the Central Office. Both the Supreme Court and the Fourth Circuit have considered the above issue and determined that an inmate's First Amendment retaliation claim presents a new <u>Bivens</u> context. <u>See</u> <u>Egbert</u>, ___ U.S. at ___, 142 S.Ct. at 1807("[T]here is no *Bivens* action for First Amendment retaliation."); <u>Dyer</u>, ___ F.4th at ___, 2022 WL 17982796 at * 3 (agreeing with district court that a First Amendment claim arose in a new context); <u>Earle</u>, 990 F.3d at 779(an inmate's First Amendment retaliation claim presents a new *Bivens* context); <u>also see</u> <u>Reichle v. Howards</u>, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that <u>Bivens</u> extends to First Amendment claims."); <u>also see</u> <u>Correctional Services Corporation v. Malesko</u>, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the

context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause").

Since the undersigned has determined the above claims arise in a new context, the Court should inquire "whether there are any 'specific factors [that] counsel hesitation' about granting the extension." Hernandez, ___ U.S. at ___, 140 S.Ct. at 743(quoting Abbasi, 582 U.S. at ___, 137 S.Ct. at 1857). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Abbasi, 582 U.S. at ___, 137 S.Ct. at 1857-58. "If there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy." Egbert, ___ U.S. at ___, 142 S.Ct. at 1803 (citing Hernandez, ___ U.S. at ___, 140 S.Ct. at 743). "If there are alternative remedial structures in place, 'that alone,' like any special factors, is reason enough to 'limit the power of the Judiciary to infer a new Bivens cause of action." Egbert, ___ U.S. at ___, 142 S.Ct. at 1804(citing Abbasi, 582 U.S. at ___, 137 S.Ct. at 1858). "[A] court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" Id.; also see Abbasi, 582 U.S. at ___, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action."); Malesko, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new Bivens remedy).

The undersigned first finds that the existence of alternative remedies available to Plaintiff strongly causes hesitation for the expansion of Bivens to the above new contexts. Alternative

remedies can include administrative, statutory, equitable, and state law remedies. In Malesko, the Supreme Court determined that a federal prisoner claiming negligence and deliberate indifference has access to "remedial mechanisms established by" the BOP. Malesko, 534 U.S. at 74, 122 S.Ct. at 520; also see Silva v. United States, 45 F.4th 1134, 1141 (10th Cir. 2022)("[W]e find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's Bivens claim."); Scates v. Craddock, 2019 WL 6462846, * 8 (N.D.W.Va. July 26, 2019), report and recommendation adopted, 2019 WL 4200862 *N.D.W.Va. Sept. 5, 2019)("[M]any courts have explicitly recognized that the BOP's administrative remedy program is an alternative process that precludes a Bivens remedy.")(collecting authority). Additionally, "[t]he possibility of relief under the Federal Tort Claims Act (FTCA) also serves as an alternative remedy that counsels against recognizing an implied damages remedy, even if the FTCA does not 'provide the exact same kind of relief Bivens would." Fields v. Federal Bureau of Prisons, 2023 WL 1219334, * 6 (W.D.Va. Jan. 31, 2023)(citing Oliva v. Nivar, 973 F.3d 438, 443-44 (5th Cir. 2020)).

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 582 U.S. at ___, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct. 1468). Similar to Egbert and Tate, the undersigned finds there is certainly at least one "rational reason" why Congress would be better equipped that the courts to determine whether to allow such claims. First, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Abbasi, 582 U.S. at ___, 137 S.Ct. at 1865; also see Egbert, ___ U.S. at ___, 142 S.Ct. at 1804 ("The political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new

judicial remedy.'"). The <u>Abassi</u> Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." <u>Abbasi</u>, 582 U.S. at ___, 137 S.Ct. at 1865. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

<u>Id.</u> The PLRA's exhaustion requirement clearly applies to <u>Bivens</u> actions. <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." <u>Jones v. Bock</u>, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing <u>Porter v. Nussle</u>, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." <u>Turner v. Safely</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted); <u>also see</u> <u>Earle</u>, 990 F.3d at 781("[T]he recognition of a *Bivens* remedy in this case would work a significant intrusion into the area of prison management that demands quick response and flexibility, and it could expose prison officials to an influx of manufactured claims.") The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." <u>Turner</u>, 482 U.S. at 84, 107 S.Ct. at 2259. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of

government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259; also see Earle, 990 F.3d at 781("Under these circumstances, we believe that Congress, not the Judiciary, is in the best position to 'weigh the costs and benefits of allowing a damage action to proceed."). Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's Eighth Amendment claim regarding conditions of her confinement and First Amendment claim regarding retaliation. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 582 U.S. at ___, 137 S.Ct. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Wilkie, 551 U.S. at 562, 127 S.Ct. 2588(quoting Bush, 462 U.S at 389, 103 S.Ct. 2404). In Abbasi, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should

22

> be imposed upon individual officers and employees of the Federal Government.
> In addition, the time and administrative costs attendant upon intrusions resulting
> from the discovery and trial process are significant factors to be considered.

Abbasi, 582 U.S. at ___, 137 S.Ct. at 1856. The undersigned notes that expanding Bivens to

allow an Eighth Amendment conditions of confinement claim or a First Amendment retaliation

claim by inmates would clearly result in an increase of suits by inmates. This increase in suits

would result in increased litigation costs to the Government and impose a burden upon individual

employees to defend such claims. See Egbert, ___ U.S. at ___, 142 S.Ct. at 1807(As to

retaliation claim, findings that Congress is better suited to authorize a damages remedy after

noting an acute risk of increasing substantial societal costs with allowing retaliation claims

because such rely on retaliatory intent and "may be less amendable to summary disposition");

Tate, 54 F.th at 848(As to conditions of confinement claim, finding that Congress is better suited

to authorize a damages remedy after noting that plaintiff sought to "impose liability on prison

officials on a systemic level, implicating the day-to-day operations of prisons, affecting the scope

of the officials'' responsibilities and duties, and implicating policy, administrative, and economic

decisions. Determinations about the temperature at which to keep cells, the level of cleanliness at

which prison employees or inmates themselves are to maintain cells, the adequacy of toilet paper

and toothbrushes, and the lengthy and thickness of mattresses are usually the subject of

systemwide executive regulations."); Earle, 990 F.3d at 774(refusing to extend *Bivens* to First

Amendment retaliation claim based upon allegations of retaliation by prison staff for a prisoner's

filing of grievance); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(*en banc*)(citations

omitted)(An inmate's claim of retaliation must be treated with skepticism because "[e]very act of

discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to

prisoner misconduct."); Gonzalez v. Bendet, 2018 WL 1524752, * 4 (S.D.S.D. March 28,

23

2018)(finding "that the cost, time, and energy associated with defending a *Bivens* action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant" and constitute a special factor counselling hesitation); <u>Andrews</u>, 2017 WL 7688266, * 4 – 5(same). As stated above, Congress recognized the need of reducing costs related to frivolous lawsuits by prisoners when it enacted the PLRA. Thus, the costs of defending such litigation against the need for damages as a remedy to protect a prisoner's rights must be balanced if <u>Bivens</u> liability is extended to such conditions of confinement claims under the Eighth Amendment and retaliation claims under the First Amendment. This is exactly the type of activity that the Supreme Court determined in <u>Abbasi</u> is better left to the legislative branch. As stated by the Fourth Circuit, "the political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy'" and "[t]his is especially so because we are ill-suited to 'predict the systemwide consequences of recognizing a cause of action under <u>Bivens</u>,' and even our 'uncertainty' on that question 'forecloses relief.'" <u>Tate</u>, 54 F.4[th] at 848(citing <u>Egbert</u>, ___ U.S. at ___, 142 S.Ct. at 1804-05). Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of <u>Bivens</u> to Plaintiff's Eighth Amendment conditions of confinement claim and First Amendment retaliation claim. <u>See Tate</u>, 54 F.th at 848; <u>Earle</u>, 990 F.3d at 780-81.

Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted concerning his Eighth Amendment conditions of confinement claim and First Amendment retaliation claim.

4.    <u>**CARES Act**</u>:

To the explain Plaintiff is requesting either compassionate release or release to

24

confinement pursuant to the CARES Act, the undersigned finds that a <u>Bivens</u> action is not the appropriate method to seek such relief. As stated above, a <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v</u>, 403 U.S. at 395-97, 91 S.Ct. at 1999. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Release from custody, or placement on home confinement, is **<u>NOT</u>** an available remedy under <u>Bivens</u>.

In a petition for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the inmate is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); <u>Rose v. Hodges</u>, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). A Section 2241 petition is used to attack the manner in which a sentence is executed, e.g., time credit calculations. Thus, a Section 2241 petition is appropriate where the prisoner challenges the fact or length of her confinement, but generally not the conditions of that confinement. <u>See</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 499-500 (1973); <u>Ajaj v. Smith</u>, 108 Fed.Appx. 743, 744 (4th Cir. 2004). **The Court notes that a Section 2241 Petition is the proper method for an inmate to seek relief pursuant to the CARES Act.** A Section 2241 Petition should be filed in the district of an inmate's confinement. The undersigned notes that Plaintiff currently has a Section 2241 Petition pending in this District regarding her challenge to the BOP's determination that she is not eligible for release to home confinement under the CARES Act. <u>See</u> <u>Washburn v. Ryle</u>, Case No. 1:22-cv-00562.

Pursuant to 18 U.S.C. § 3582, a Court may modify or reduce a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility . . .."[2] 18 U.S.C. § 3582(c)(1)(A). If such

circumstances exist, the sentencing court may modify or reduce the term of imprisonment after

considering the factors set forth in 18 U.S.C. § 3553(a), and finding that "extraordinary and

compelling reasons warrant such a reduction and "that a reduction is consistent with applicable

policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). A

Section 3582 Motion requesting compassionate release, however, must be filed with the

sentencing court. See 18 U.S.C. 3582(c)(1)(A); also see Young v. Warden of FCI Williamsburg,

2020 WL 4195166, * 4 (D.S.C. May 27, 2020), *report and recommendation adopted by*, 2020

WL 4194629 (S.D.W.Va. July 21, 2020)(This Court "has no authority under the First Step Act to

consider a request for compassionate release since Petitioner was not sentenced in this Court.

Only a sentencing court can allow a sentence reduction/compassionate release under 18 U.S.C. §

3582(c)(1)(A)(i), which means that the process must be undertaken in the district court where the

prisoner was sentenced."); Bart v. Reherman, 2020 WL 3421774, * 6 (S.D.W.Va. April 8, 2020),

*report and recommendation adopted by*, 2020 WL 3421481 (S.D.W.Va. June 22, 2020)(stating

that "[c]ourts in this Circuit and elsewhere have consistently found that a § 2241 petition is not

the appropriate mechanism by which to raise a request for compassionate release under § 3582,

as such a request must instead be brought in the sentencing court.")(collecting cases);

Deffenbaugh v. Sullivan, 2019 WL 1779573, * 2 (E.D.N.C. April 23, 2019)("If petitioner now

seeks to file his own motion for compassionate release, such a motion must be filed in the

---

[2] Prior to the First Step Act of 2018, the BOP had to file a motion with the court requesting the inmate's early release. Now the First Step Act allows the defendant to be considered for early release if either (1) the BOP has tendered to the Court a motion for the inmate's early release, or (2) the inmate has fully exhausted all administrative remedies concerning the BOP's failure to present the motion for the inmate's early release.

sentencing court."); <u>Robinson v. Wilson</u>, 2017 WL 5586981, * 5 (S.D.W.Va. Sept. 26, 2017), *report and recommendation adopted by*, 2017 WL 5586272 (S.D.W.Va. Nov. 20, 2017)("Like a § 2255 Motion, a § 3582 motion must be filed in the movant's underlying criminal action and addressed by the sentencing court."). **The Court notes that an inmate seeking compassionate release should file a Section 3582 Motion with his or her sentencing court.**

Based upon the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim based upon the CARES Act.

**5.     No Violation of Equal Protection.**

Finally, Plaintiff alleges that Defendant Washburn discriminated against her by denying her home confinement under the CARES Act. (Document No. 1.) Plaintiff alleges she was subjected to a different standard of review than other inmates. (<u>Id.</u>) When asserting a <u>Bivens</u> claim for discrimination, "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173, L.Ed.2d 868 (2009) (citations omitted). In order to establish a violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Wilson v. United States</u>, 332 F.R.D. 505, 525 (S.D.W. Va. Aug. 19, 2019) (Eifert, M.J.)(quoting <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998). Plaintiff must first demonstrate that she had been treated differently from others with whom she is similarly situated and "that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001). In the instant case, undersigned finds that Plaintiff has alleged no facts whatsoever that suggest she is a member of a protected class, let alone that Defendant Walton discriminated against her based upon same. Thus, the undersigned finds that Plaintiff's

discrimination claim should be dismissed for failure to state a claim.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint as to the following: (1) All claims against FPC Alderson; (2) Claim of unconstitutional conditions of confinement in violation of the Eighth Amendment; (3) Claim concerning the alleged violation of the First Amendment; (4) Claim concerning the alleged violation of the CARES Act; (5) Claim of discrimination in violation of the Equal Protection Clause; and **REFER** this matter back to the undersigned for further proceedings concerning Plaintiff's claim of deliberate indifference against Defendant Renick.[3]

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155

(1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*,.

Date: March 8, 2023.

Omar J. Aboulhosn
United States Magistrate Judge

---

[3] By separate Order entered this day, the undersigned has directed the Clerk's Office to issue process upon Defendant Renick as to Plaintiff's deliberate indifference claim under the Eighth Amendment.