**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

| | |
|---|---|
| **CHERIE WASHBURN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No. 1:23-00066** |
| ) | |
| **DANA RENICK, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendant Renick's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 9), filed on May 5, 2023. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant Renick's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by Defendant Renick in moving to dismiss. (Document No. 13.) On July 11, 2023, Plaintiff filed her Response in Opposition. (Document No. 16.) Defendant Renick filed her Reply on July 18, 2023. (Document No. 17.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendant Renick's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 9) should be granted.

## PROCEDURAL HISTORY

On January 27, 2023, Plaintiff, acting *pro se*,[1] filed her Complaint for alleged violations

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

of her constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) In her Complaint, Plaintiff names the following as Defendants: (1) Dana Renick, FPC Alderson; (2) Sherry Walton, FPC Alderson; (3) Warden Rile, FPC Alderson; and (4) FPC Alderson. (<u>Id.</u>) Plaintiff alleges that she self-reported to FPC Alderson on March 25, 2022. (<u>Id.</u>, p. 4.) Plaintiff explains that she was 7 ½ weeks postpartum. (<u>Id.</u>) Plaintiff alleges that she notified FPC Alderson staff at intake in April 2022, that she needed to see an OB-GYN and she was suffering with severe postpartum depression. (<u>Id.</u>) Plaintiff explained that she was unable to be evaluated by her OB-GYN prior to her surrender date, and she still needed her postpartum exam. (<u>Id.</u>) Plaintiff was advised she would be placed on call-out to see a doctor. (<u>Id.</u>) Plaintiff complains that "weeks passed" and she was not evaluated by a doctor or provided with any treatment for her postpartum depression. (<u>Id.</u>, pp. 4 – 5.) Plaintiff alleges that she then went to sick-call to request help for her postpartum depression, which she claims had worsened to the point where "could not stop crying." (<u>Id.</u>) Plaintiff states she was hearing "phantom baby cries, I could not sleep, and I was having feelings of confusion and disorientation." (<u>Id.</u>) Plaintiff acknowledges that she was again advised she would be placed on call-out to see a provider. (<u>Id.</u>) Plaintiff claims that by the "end of May, [her] symptoms were extreme, hearing phantom baby cries, inability to sleep, inability to eat, confusion, and uncontrolled crying." (<u>Id.</u>) Plaintiff alleges that as a result, she developed shingles. (<u>Id.</u>) Plaintiff acknowledges she went to sick-call and was provided an antiviral medication. (<u>Id.</u>) Plaintiff, however, states that she begged for help with her postpartum depression, hard knots in her breasts, and breast pain. (<u>Id.</u>) Plaintiff states she was again informed to watch call-out. (<u>Id.</u>) Plaintiff acknowledges that at the end of May, she was evaluated by Defendant Renick and

2

provided a low dose prescription for an antidepressant. (Id.) Plaintiff contends that Defendant Renick further stated that she would put Plaintiff on call-out to be evaluated by an OB-GYN. (Id.) Plaintiff alleges that after taking the antidepressant medication for a few days, she had a reaction causing vomiting and severe headaches. (Id.) Plaintiff explains she went to Health Services and the nurse on duty called Defendant Renick for treatment authorization. (Id.) Plaintiff complains that she was tested for COVID despite her lack of a fever or other COVID related symptoms. (Id.) Plaintiff asserts that despite her negative test results for COVID, Defendant Renick ordered Plaintiff to be placed in isolation in the active COVID unit. (Id.) Plaintiff alleges that although she was still suffering from postpartum depression and breast pain, she was held in COVID isolation for nearly one month where she could not get treatment for her postpartum depression or breast pain. (Id.) During this one month period of isolation, Plaintiff alleges that she "wrote Jennifer Knox at Central . . . because [she] was very sick and could not get help." (Id.) Plaintiff states that when she was finally allowed to return to her unit, she had lost 18 pounds and was dehydrated. (Id., p. 6.) Plaintiff alleges she reported to sick-call in September complaining that her "ovary pain was worse and [she] still had never seen an OB-GYN." (Id.) Plaintiff states that an ultrasound was conducted, which revealed ovarian cysts. (Id.) Plaintiff asserts "[t]o date, [she has] never seen an OB-GYN [and] never had a breast exam." (Id.) Based on the foregoing, Plaintiff alleges that Defendant Renick acted with deliberate indifference to her health and safety in violation of the Eighth Amendment by failing to adequately treat her postpartum depression and breast pain, and placing her in the active COVID unit knowing she tested negative and was at high risk. (Id.)

Next, Plaintiff alleges that Defendant Sherry Walton violated her constitutional rights when she reviewed and denied Plaintiff relief under the CARES Act. (Id., p. 7.) Plaintiff alleges that

when Defendant Walton originally reviewed Plaintiff under the CARES Act in May 2022, she advised Plaintiff that she did not have a risk factor. (Id.) Plaintiff explains that she again asked to be reviewed under the CARES Act in mid-July, which was after she wrote the Central Office complaining about her placement in COVID isolation and the denial of medical care. (Id., pp. 6 - 7.) Plaintiff alleges that "in October Ms. Walton denied [her] based on a comment [the] Judge made about COVID [and] [t]his denial was not based on any of the valid criteria outlined in the CARES Act memorandum." (Id.) Plaintiff explains that "[i]t was an opinion of the Judge that she did not think COVID was a mitigating sentencing factor for purposes of the duration of the sentence." (Id.) Plaintiff argues that "[t]he Court transcript clearly shows the comment was in response to the request for the low end of the plea agreement, and had absolutely no bearing on the CARES Act health risk factors or minimum PATTERN score review factors." (Id.) Plaintiff states that "Unit Team Mr. Snuffer" approved her for home confinement under the CARES Act, but Defendant Walton denied it. (Id.) Plaintiff states that she was not reviewed "fairly" because she was the "only one reviewed by researching the Judge's comments and [she] was the only person on this compound to have been denied based on a comment and COVID opinion of the Judge." (Id.) Plaintiff alleges the foregoing resulted in a "violation of [her] constitutional right to be free from discrimination and retaliation." (Id., p. 8.) Plaintiff asserts that "reviewing someone in a wholly separate and unrelated manner differently than the policy and differently than all other people reviewed is the definition of discrimination." (Id., p. 8.) Plaintiff states that she "believes she was retaliated against based on her contact with the Central Office." (Id.)

Finally, Plaintiff alleges that Warden Rile subjected Plaintiff to unconstitutional conditions of confinement by ordering continuous lighting in her unit for 24/7 from on or about July 1, 2022

4

through July 30, 2022. (Id., p. 9.) Plaintiff explains that the foregoing was the result of an inmate tampering with a light bulb with the floor lighting. (Id.) Plaintiff states the entire unit had to sleep with the lights on for 24 hours a day for one month. (Id.) Plaintiff alleges that "having high intensity bright lights always on caused sleep deprivation, dizziness and fatigue." (Id.) Plaintiff asserts she was "on the top bunk directly under the main row of lighting and it was torture to never be able to sleep." (Id.) Plaintiff alleges that her "eyes became red and swollen" and she suffered from dizziness and headaches. (Id.) Plaintiff further complains that she was disoriented because she could not tell if it was day or night. (Id.) Plaintiff asserts the foregoing constituted cruel and unusual punishment. (Id.) Based on the foregoing alleged constitutional violations, Plaintiff requests injunctive and monetary relief. (Id., p. 10.)

As Exhibits, Plaintiff attaches the following: (1) A copy of her "Health Problems" as noted by Health Services (Document No. 1-1, p. 1.); (2) A copy of Plaintiff's "Inmate to Staff Message" to Ms. Walton regarding the CARES Act (Id., pp. 2, 9 - 10.); (3) A copy of pertinent pages from the BOP's "Rights and Responsibilities" (Id., pp. 3 – 4.); (4) A copy of Plaintiff's "Inmate Request to Staff" dated April 4, 2022, requesting medication for her postpartum depression (Id., p. 5.); (5) A copy of Associate Warden Napier's "Response to Correspondence" notifying Plaintiff that she was ineligible for earlier home confinement placement based on the CARES Act (Id., p. 6.); (6) A copy of Plaintiff's "Request for Administrative Remedy" dated October 17, 2022, regarding her denial of release to home confinement under the CARES Act (Id., p. 7.); (8) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 4, 2022, regarding her denial of release to home confinement under the CARES Act (Id., p. 8.); (9) A copy of an Affidavit from Inmate Samantha Miller (Id., p. 11.); (10) A copy of an Affidavit from Inmate Melissa Rous (Id., p. 12.); (11) A copy of Plaintiff's "Inmate to Staff Message" to Mr. Smith regarding the CARES

Act (Id., p. 13.); (12) A copy of Plaintiff's "Inmate to Staff Message" to Associate Warden Brammer regarding the CARES Act (Id., p. 14.); (13) A copy of Plaintiff's "Inmate to Staff Message" to Dr. Smith regarding the CARES Act (Id., p. 15.); (14) A copy of Plaintiff's "Inmate Request to Staff" dated November 28, 2022, regarding a request for medication for panic attacks (Id., p. 16.); (15) A copy of a letter in support of Plaintiff prepared by Inmate Shemika Williams (Id., pp. 17 – 18.); and (16) A copy of an Affidavit from Inmate Ashley Shackelford (Id., p. 19.).

By Proposed Findings and Recommendation entered on March 8, 2023, the undersigned recommended that the District Court dismiss Plaintiff's Complaint as to the following: (1) All claims against FPC Alderson; (2) Claim of unconstitutional conditions of confinement in violation of the Eighth Amendment; (3) Claim concerning the alleged violation of the First Amendment; (4) Claim concerning the alleged violation of the CARES Act; (5) Claim of discrimination in violation of the Equal Protection Clause; and refer this matter back to the undersigned for further proceedings concerning Plaintiff's claim of deliberate indifference against Defendant Renick. (Document No. 4.) By separate Order entered the same day, the undersigned directed the Clerk's Office to issue process upon Defendant Renick as to Plaintiff's deliberate indifference claim under the Eighth Amendment. (Document No. 5.) The Clerk's Office issued process the same day. (Document No. 6.)

On May 5, 2023, Defendant Renick filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 9 and 12.) Defendant Renick argues that Plaintiff's claim should be dismissed based on the following: (1) Plaintiff failed to exhaust her administrative remedies (Document No. 12, pp. 8 – 10); (2) "Plaintiff's claims are not cognizable under *Bivens*" (Id., pp. 10 – 25); and (3) Defendant Renick

is entitled to qualified immunity" (Id., pp. 25 – 30). As Exhibits, Defendant Renick attaches the following: (1) The Declaration of Misty Shaw (Document No. 9-1, pp. 1 – 2); (2) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., p. 4); (3) A copy of Plaintiff's Administrative Remedy Generalized Retrieval dated March 13, 2023 (Id., pp. 6 – 7); (4) The Declaration of Caitlin Sykes (Document No. 9-2, pp. 1 – 3); (5) A copy of Program Statement 6031.04, Patient Care (Id., pp. 5 – 62); (6) A copy of COVID-19 Pandemic Response Plan, Module 3:Screening and Testing (Id., pp. 64 – 74); (7) A copy of Program Statement 5200.07, Female Offender Manual (Document No. 9-3); (8) A copy of Plaintiff's medical and psychology records (Document No. 9-4, pp. 1 – 181); (9) A copy of Plaintiff's Inmate Request to Staff dated September 7, 2022, stating the pain in her side had resolved and she didn't think she needed an ultrasound anymore (Id., p. 183); (10) A copy of Plaintiff's radiology report (Id., p. 185); and (11) A copy of Program Statement 6027.02, Health Care Provider Credential Verification, Privileges, and Practice Agreement Program (Document No. 9-5).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 13, 2023, advising her of the right to file a response to Defendant Renick's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 13.) On July 11, 2023, Plaintiff filed her Response in Opposition. (Document No. 16.) As Exhibits, Plaintiff attaches the following: (1) A copy of her "Inmate Request to Staff" regarding treatment for postpartum depression dated April 4, 2022 (Document No. 16-1, p. 1); (2) A copy of a TRULINCS email from Plaintiff to Health Administrator Sykes dated April 30, 2022 (Id., p. 2); (3) A copy of TRULINCS email communications between Plaintiff and the Associate Warden dated June 13, 2022 (Id., p. 3); (4) A copy of a TRULINCS email from Plaintiff to Ms. Evans

dated June 16, 2022 (Id., p. 4); (5) A copy of a TRULINCS email from Plaintiff to PA Roberts

dated July 8, 2022 (Id., p. 5); (6) A copy of TRUNLINCS email communications between Plaintiff

and the Psychology Department dated August 1, 2022 (Id., p. 6); (7) A copy of a TRULINCS email

from Plaintiff to PA Roberts dated September 16, 2022 (Id., p. 7); (8) A copy of Plaintiff's

pertinent medical records (Id., pp. 8 - 15); and (9) A copy of a letter from Inmate Leah Leach (Id.,

p. 16). On July 18, 2023, Defendant Renick filed her Reply. (Document No. 17.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.

662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550

U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted

as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550

U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment,

however, the District Court may not dismiss the Complaint with prejudice, but must permit the

amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases

authorized by Article III of the United States Constitution and statutes enacted by Congress.

Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-

moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving

party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof

of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

## A.    Failure to Exhaust:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S.

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

[3] 42 U.S.C. § 1997e(a) provides as follows:
> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire

complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The

Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted);

15

also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes

about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c). An inmate's deadlines for filing a request or appeal may be extended where an inmate demonstrates a valid reason for delay. Id., § 542.14(b).

In her Complaint, Plaintiff indicates that she did present the facts related to her claim in the prisoner grievance procedure. (Document No. 1, p. 3.) Specifically, Plaintiff states the following: "Level one result said they will look into it; Level two – no response after 30 days; I was not permitted level 3, counselor would not give a BP-11." (Id.)

In her Motion, Defendant Renick argues that Plaintiff failed to fully exhaust her administrative remedies prior to initiating the above action. (Document No. 9 and Document No. 12, pp. 8 – 10.) Defendant Renick asserts that Plaintiff filed ten administrative remedies while incarcerated at FPC Alderson. (Document No. 12, pp. 9 - 10.) Defendant Renick explains that out of those ten filings, only one relates to Plaintiff's medical care. (Id., p. 10.) Defendant Renick, however, states the administrative remedy request regarding Plaintiff's medical care "was closed at the institutional level, and Plaintiff did not file an appeal to the Regional Director or to the Central Office." (Id.) Finally, Defendant Renick notes that "it is clear that the administrative remedy process was made available to Plaintiff, as evidenced by Plaintiff's ten administrative remedy submissions, including filings at all three levels." (Id.) Accordingly, Defendant Renick argues that Plaintiff's claim should be dismissed for failure to exhaust. (Id.)

In support, Defendant Renick submits the Declaration of Ms. Misty Shaw, a Paralegal for

17

the Mid-Atlantic Regional Consolidated Legal Center. (Document No. 9-1.) Ms. Shaw declares

that in her position she has access to SENTRY, the Bureau of Prisons' online system containing,

among other things, information about inmates' administrative remedy filings. (Id.) Specifically,

Ms. Shaw states as follows in her Declaration (Id., pp. 1 - 2.):

***

> 7.     Review of Plaintiff's record show that she has not exhausted her
>        administrative remedies."
>
> 8.     While incarcerated with the BOP, Plaintiff filed or attempted to file ten
>        administrative remedies while incarcerated at FPC Alderson. Of those ten
>        filings, only one relates to Plaintiff's medical treatment: Request for
>        Administrative Remedy 1129370-F1. That administrative remedy request
>        was closed at the institutional level, and Plaintiff did not file an appeal to
>        the Regional Director or to Central Office.

***

(Id.) Ms. Shaw attached a copy of Plaintiff's Administrative Remedy Generalized Retrieval. (Id.,

pp. 6 – 7.)

In her Response in Opposition, Plaintiff states that she should be excused from exhausting

her administrative remedies because "no administrative remedies were available during

quarantine." (Document No. 16, p. 6.) Plaintiff explains that she first filed "a BP9 [but] the

response was that she did not need an OBGYN appointment." (Id.) Plaintiff states that she next

filed a "BP10 and did not receive a response within 30 days." (Id.) Plaintiff claims "[s]he could

not file the BP11 because she was denied access to the BP11 form while in quarantine." (Id.)

Plaintiff contends she "had no access to the case manager or unit team counselor." (Id.) Plaintiff

asserts that "[s]he did send an email requesting the BP11 form, but the form never arrived and the

20 day time period for filing elapsed while was in quarantine for 27 days." (Id.) Plaintiff argues

that Defendant Renick's claim that "other remedies were filed indicated Plaintiff had access to the

remedy process [but] fails to address that those remedies were filed while not in quarantine." (Id.)

18

In Reply, Defendant Renick argues that "Plaintiff's allegations regarding the timing of her placement in quarantine and the filing of her administrative remedy requests are inaccurate." (Document No. 17.) Defendant Renick states that "Plaintiff was placed in COVID-19 quarantine on or about May 31, 2022, after reporting symptoms of COVID-19, including vomiting, nausea, headache, and dizziness." (Id., p. 2.) Defendant Renick notes that Plaintiff acknowledges she was in quarantine for twenty-seven days and was released back into general population in late June 2022. (Id.) Defendant Renick, however, states that Plaintiff filed her first administrative remedy request at the institutional level on August 3, 2022, which was over a month after her release from quarantine. (Id.) Defendant Renick, therefore, argues that "Plaintiff was not in quarantine at the time she began filing her administrative remedy requests, and, therefore, her placement in quarantine was not – and could not be – the cause of her delay in filing an appeal." (Id.) Furthermore, Defendant Renick asserts that "it is clear the administrative remedy process was available to Plaintiff." (Id., p. 3.) Defendant Renick states that Plaintiff filed ten administrative remedies while incarcerated at FPC Alderson, which including filings at all three levels. (Id.) Thus, Defendant Renick argues that "Plaintiff's allegations that she was precluded from filing her administrative remedies is directly contradicted by the record" and should be rejected. (Id.) Finally, Defendant Renick argues that even assuming Plaintiff's placement in quarantine precluded her from filing an appeal, "BOP policy provides inmates with a procedure through which they can request an extension to file an appeal '[w]here the inmate [can demonstrate] a valid reason for delay.'" (Id.) Defendant Renick, however, notes that Plaintiff "did not file a request to extend the time limit for filing an appeal, and she did not seek review from Central Office regarding these claims prior to filing this action." (Id.)

Based upon a review of the record, the undersigned finds that Defendant Renick has met

her burden proving that Plaintiff failed to exhaust her available administrative remedies prior to filing her Complaint. As stated above, whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel, 2017 WL 4004579, at * 3; Lee, 789 F.3d at 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse, 741 Fed.Appx. at 178 ("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") In her Response in Opposition, Plaintiff asserts that the administrative process was unavailable. (Document No. 16, p. 6.) To establish her claim of unavailability, however, Plaintiff "must adduce facts showing that [s]he was prevented, through no fault of [her] own, from availing [herself] of that procedure." Graham, 413 Fed.Appx. at 663. In support, Plaintiff states that she was unable to obtain a BP-11 form due to her placement in quarantine. (Document No. 16, p. 6.) Plaintiff contends she "had no access to her case manager or unit team counselor" to request a BP-11 form while in quarantine. (Id.) Plaintiff further asserts that "[s]he did send an email requesting the BP11 form, but the form never arrived and the 20 day time period for filing elapsed while [she] was in quarantine for 27 days." (Id.) Such bare assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. See Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). It is well established that a bare assertion that is unsupported by any detail will not satisfy a prisoner-plaintiff's burden of showing that remedies were unavailable. Mendez v. Breckon, 2021 WL 4268890, * 3 (W.D.Va. Sept. 20, 2021)(citation omitted); Creel, 2017 WL 4004579, at * 4 – 6 ("Unsubstantiated and conclusory assertions by an inmate that prison officials thwarted pursuit of the administrative process are insufficient to excuse failure to exhaust."); Tosado v. Gilbert, 2020 WL 6487685, * 3 – 4 (W.D.Va. Nov. 4, 2020)(stating that "numerous

courts within the Fourth Circuit and elsewhere have held that 'unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fails to create a genuine issue of material fact sufficient to withstand summary judgment"). Plaintiff wholly fails to provide adequate detail to support a claim that the administrative remedy process was unavailable due to the denial of a BP-11 form. Specifically, Plaintiff fails to state who the email was allegedly sent to and on what date. Although Plaintiff provides copies of several emails as exhibits in support of other arguments contained in her Response, Plaintiff fails to include a copy of the alleged email requesting a BP-11 form. Additionally, there is no allegation or indication that Plaintiff requested an extension of time due to her alleged placement in quarantine. As noted above, 28 C.F.R. § 542.18 provides that when an inmate demonstrates a "valid reason for delay," an extension in filing time may be granted. Specifically, Section 542.18(b) provides that "valid reason for delay" means the following: (a) Generally, "a situation which prevented the inmate from submitting the request within the established time frame;" (b) "[A]n extended period in-transit during which the inmate was separated from documents needed to prepare the Requests or Appeal;" (c) "[A]n extended period of time during which the inmate was physically incapable of preparing a Requests or Appeal;" (d) "[A]n unusually long period taken for informal resolution attempts;" or (e) "[I]ndication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed." Id. Although Plaintiff's alleged placement in quarantine would have most likely constituted a "valid reason for delay" warranting an extension under Section 542.18(b), Plaintiff appears to have decided to forego the administrative remedy process. The undersigned finds that the foregoing does not result in a finding that administrative remedy process was rendered unavailable. It merely appears that

Plaintiff may not have had a clear understanding of the administrative remedy process. "[A] prisoner's claim that the grievance system was unavailable to her because she lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." Graham v. County of Gloucester, 668 F.Supp.2d 734, 741 (E.D.Va. 2009)(citing authority from the Third, Sixth, Seventh, Eighth, and Tenth Circuits), aff'd, 413 Fed.Appx. 660 (4th Cir. 2011); also see Gonzalez v. Crawford, 419 Fed.Appx. 522, 523 (5th Cir. 2011)(An inmate's "alleged ignorance of the exhaustion requirement, or the fact that he might have misconstrued the language in the handbook, does not excuse his failure to exhaust."); Napier v. Laurel County, 636 F.3d 218, 221-22 (6th Cir. 2011)(rejecting plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); Twitty v. McCoskey, 226 Fed.Appx. 594, 596 (7th Cir. 2007)("A prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance."); Russell v. Butcher, 2021 WL 1618458, * 5 (S.D.Va. April 26, 2021)(J. Goodwin)(finding that an inmate's "lack of knowledge of grievance procedures does not equate to unavailability"); State v. South Carolina Dept. of Corrections, 2019 WL 3773867, * 6 (D.S.C. Aug. 9, 2019)("Ignorance of the grievance process does not excuse [plaintiff's] failure to exhaust his administrative remedies."); Persinger v. Northern Regional Jail, 2015 WL 4645665 (N.D.W.Va. Aug. 5, 2015)("Lack of knowledge of the grievance process does not excuse compliance with the requirement that a prisoner exhaust his administrative remedies."); Adams v. Southwest Virginia Regional Jail, 2014 WL 3828392, * 3 (W.D.Va. Aug. 4, 2014)(finding that plaintiff's contention that his failure to exhaust should be excused based on his ignorance about the grievance process fails); Goodwin v. Beasley, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing

lack of knowledge about the grievance process."); <u>Smith v. Boyd</u>, 2008 WL 2763841, * 1 (D.S.C. July 11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process.").

Notwithstanding the foregoing, the undersigned further finds that the record does not support Plaintiff's claim that she was placed in quarantine during the time she was attempting to exhaust her administrative remedies regarding the claims asserted in her Complaint. The record reveals that Plaintiff was placed in COVID quarantine on or about May 31, 2022, after she reported symptoms that included vomiting, nausea, headache, and dizziness. (Document No. 9-4, pp. 27 – 28; Document No. 9-2, p. 2, ¶ 8; Document No. 9-2, pp. 64 – 74.) Plaintiff acknowledges that she was quarantined for 27-days, and then she was released back into general population in late June, 2022. (Document No. 16, p. 6.) On August 3, 2022, Plaintiff filed her first and only administrative remedy request at the institutional level regarding her medical issues (Remedy ID No. 1129370-F1). Thus, the record does not support a finding that Plaintiff was placed in quarantine when she began, or within the relevant period of time after initiating, the administrative remedy process regarding her instant claims. Further, the record reveals that the administrative remedy process was available to Plaintiff. Plaintiff filed ten administrative remedies while incarcerated at FPC Alderson between August 2022 and December 2022, which included filings at all three levels (Remedy ID Nos. 1129370-F1, 1129406-F1, 1134575-F1, 1134575-R1, 1134575-R2, 1138706-R1, 1139018-F1, 1139162-F1, 1139162-R1, and 1138706-A1). (Document No. 9-1, p. 7.) Plaintiff's ability to file a grievance during this time period exhibits that the administrative remedy process was available to Plaintiff. <u>See</u> <u>Ferguson v. Clarke</u>, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by

evidence that inmate submitted other grievances within the same period); <u>Al Mujahidin v. Harouff</u>, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed).

Based on the foregoing, the undersigned finds that the above action should be dismissed in view of Plaintiff's failure to exhaust her administrative remedies. Accordingly, the undersigned respectfully recommends that Defendant Renick's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 9) be granted. The undersigned finds it unnecessary to consider the other reasons that Defendant Renick has submitted for dismissal of Plaintiff's claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 9), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 14, 2023.



Omar J. Aboulhosn
United States Magistrate Judge

25